Marc E. Kasowitz
David M. Friedman
Jed I. Bergman
Christine A. Montenegro
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

*Attorneys for Plaintiffs-Appellants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

|  |  |
|---|---|
| | :   Chapter 11 |
| In re: | : |
| | :   Case No. 12-12080 (SCC) |
| LIGHTSQUARED INC., *et al.*,[1] | : |
| | :   Jointly Administered |
| Debtors. | : |
| | :   Adv. Proc. No. 13-1390 (SCC) |

-------------------------------------------------------------------X

|  |  |
|---|---|
| HARBINGER CAPITAL PARTNERS LLC, HGW US | : |
| HOLDING COMPANY LP, BLUE LINE DZM CORP., | : |
| AND HARBINGER CAPITAL PARTNERS SP, INC., | :   **HARBINGER'S** |
| | :   **MEMORANDUM OF LAW** |
| Plaintiffs-Appellants, | :   **IN SUPPORT OF ITS MOTION** |
| | :   **FOR LEAVE TO APPEAL** |
| - against- | : |
| | : |
| CHARLES W. ERGEN, ECHOSTAR CORPORATION, | : |
| DISH NETWORK CORPORATION, L-BAND | : |
| ACQUISITION LLC, SP SPECIAL | : |
| OPPORTUNITIES LLC, SPECIAL OPPORTUNITIES | : |
| HOLDINGS LLC, SOUND POINT CAPITAL | : |
| MANAGEMENT LP, AND STEPHEN KETCHUM, | : |
| | : |
| Defendants-Appellees. | : |

-------------------------------------------------------------------X

THE AD HOC SECURED GROUP OF             :

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal or foreign tax or registration identification number, are: LightSquared Inc. (8845), LightSquared Investors Holdings Inc. (0984), One Dot Four Corp. (8806), One Dot Six Corp. (8763), SkyTerra Rollup LLC (N/A), SkyTerra Rollup Sub LLC (N/A), SkyTerra Investors LLC (N/A), TMI Communications Delaware, Limited Partnership (4456), LightSquared GP Inc. (6190), LightSquared LP (3801), ATC Technologies, LLC (3432), LightSquared Corp. (1361), LightSquared Finance Co. (6962), LightSquared Network LLC (1750), LightSquared Inc. of Virginia (9725), LightSquared Subsidiary LLC (9821), LightSquared Bermuda Ltd. (7247), SkyTerra Holdings (Canada) Inc. (0631), SkyTerra (Canada) Inc. (0629) and One Dot Six TVCC Corp. (0040).

LIGHTSQUARED LP LENDERS,[2] LIGHTSQUARED   :
INC., *et al.*, MAST CAPITAL MANAGEMENT, LLC,   :
AND U.S. BANK NATIONAL ASSOCIATION,   :
                                                                                          :
                                        Intervenors.   :
------------------------------------------------------------------X

---

[2] As of the date hereof, the Ad Hoc LP Secured Group is comprised of Capital Research and Management Company, Cyrus Capital Partners, L.P., Fir Tree Capital Opportunity Master Fund, L.P., Intermarket Corporation, SP Special Opportunities LLC, and UBS AG, Stamford Branch.  Collectively, each member of the Ad Hoc LP Secured Group or its affiliate is the advisor to or beneficial owner of, or the holder or manager of, various accounts with investment authority, contractual authority or voting authority for $1,379,606,450.74 in aggregate principal amount of loans (the "LP Secured Loans") made pursuant to that certain credit agreement, dated as of October 1, 2010 by and among LightSquared LP as borrower, its affiliate guarantors and the lenders party thereto from time to time, which represents approximately 82% of the outstanding LP Secured Loans (*See* Revised Seventh Supplemental Verified Statement of White & Case LLP Pursuant to Bankruptcy Rule 2019, dated July 26, 2013 [Docket No. 777]).

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

STATEMENT OF ISSUES ON APPEAL AND RELIEF REQUESTED ...................................... 1

PRELIMINARY STATEMENT ................................................................................................... 2

BACKGROUND ........................................................................................................................... 6

    A.     LightSquared's Bankruptcy Proceedings. ................................................................ 6

    B.     Harbinger's Claims. ................................................................................................ 7

    C.     The Bankruptcy Court's Decision And Order. ..................................................... 10

    D.     Additional Proceedings In The Bankruptcy Court. ............................................... 12

ARGUMENT ............................................................................................................................... 13

I.      THE DECISION AND ORDER ARE APPEALABLE AS OF RIGHT. .......................... 13

II.     ALTERNATIVELY, THIS COURT SHOULD GRANT LEAVE TO APPEAL. ........... 16

    A.     Harbinger's Appeal Presents Controlling Questions Of Law. .............................. 17

    B.     There Is Substantial Ground For Difference Of Opinion. .................................... 19

            1.     Equitable Disallowance ............................................................................ 20

            2.     Reliance ..................................................................................................... 21

            3.     Contract And Fraud Claims ...................................................................... 22

            4.     Standing .................................................................................................... 23

    C.     An Immediate Appeal Would Materially Advance
           The Ultimate Termination Of The Litigation. ...................................................... 23

CONCLUSION ............................................................................................................................ 25

**Page(s)**

**Cases**

*Adelphia Communs. Corp. v. Bank of Am., N.A. (In re Adelphia Communs. Corp.)*,
    365 B.R. 24 (Bankr. S.D.N.Y. 2007) ........................................................................22

*Adelphia Recovery Trust v. Bank of Am., N.A.*,
    390 B.R. 64 (S.D.N.Y. 2008)..................................................................................22

*Allied Air Freight, Inc. v. Pan Am. World Airways, Inc.*,
    393 F.2d 441 (2d Cir. 1968)...................................................................................15

*Allstate Ins. Co. v. Elzanaty*,
    2013 WL 2154759 (E.D.N.Y. May 16, 2013) .......................................................21

*Arnold Chevrolet LLC v. Tribune Co.*,
    418 F. Supp. 2d 172 (E.D.N.Y. 2006) ...................................................................23

*Brown v. AXA RE*,
    2004 WL 941959 (S.D.N.Y. May 3, 2004) ...................................................... 24-25

*Cochran v. Channing Corp.*,
    211 F. Supp. 239 (S.D.N.Y. 1962) .........................................................................23

*Doninger v. Niehoff*,
    642 F.3d 334 (2d Cir. 2011)...................................................................................18

*In re Emerald Casino, Inc.*,
    334 B.R. 378 (N.D. Ill. 2005) .......................................................................... 15-16

*Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*,
    2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006)..................................................19, 21

*Faiveley Transp. USA, Inc. v. Wabtec Corp.*,
    2011 WL 1899730 (S.D.N.Y. May 13, 2011) .......................................................25

*Harbinger Capital Partners LLC, et al., v. Ergen, et al.*,
    (Bankr. S.D.N.Y. Case No. 12-12080 (SCC); Adv. Proc. No. 13-1390 (SCC)) .......................1

*In re Integrated Resources, Inc.*,
    3 F.3d 49 (2d Cir. 1993)................................................................................... 16-17

*Kiobel v. Royal Dutch Petroleum Co.*,
    621 F.3d 111 (2d Cir. 2010)...................................................................................18

*Klinghoffer v. S.N.C. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990)........................................................................ 18-19

*LinkCo, Inc. v. Fujitsu Ltd.*,
    230 F. Supp. 2d 492 (S.D.N.Y. 2002)................................................................25

*Liquidators of Lehman Bros. Australia Ltd. v. Lehman Bros. Special Fin. (In re Lehman Bros.*
    *Holdings Inc.)*,
    697 F.3d 74 (2d Cir. 2012)................................................................15, 17

*Murray v. Metro. Life Ins. Co.*,
    583 F.3d 173 (2d Cir. 2009)................................................................18

*N. Fork Bank v. Abelson*,
    207 B.R. 382 (E.D.N.Y. 1997) ........................................................... 18-19

*NML Capital, Ltd. v. Banco Central de la Republica Argentina*,
    652 F.3d 172 (2d Cir. 2011)................................................................18

*Pal Family Trust v. Ticor Title Ins.*,
    490 B.R. 480 (S.D.N.Y. 2013)........................................................... 14-15

*Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.)*,
    101 F.3d 882 (2d Cir. 1996)................................................................15, 16, 17

*Pepper v. Litton*,
    308 U.S. 295 (1939)........................................................................ 21-22

*Powers v. Ostreicher*,
    824 F. Supp. 372 (S.D.N.Y. 1993) .................................................................23

*In re Prudential Lines, Inc.*,
    59 F.3d 327 (2d Cir. 1995)................................................................16

*Retirement Bd. of Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of New*
    *York Mellon*, 2013 WL 593766 (S.D.N.Y. Feb. 14, 2013).............................................19, 25

*Robinson v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
    45 B.R. 833 (S.D.N.Y.1984)................................................................18

*Rodin Properties-Shore Mall, N.V. v. Ullman*,
    694 N.Y.S.2d 374 (1st Dep't 1999) .................................................................24

*Sec. Investor Prot. Corp. v. BDO Seidman, LLP*,
    222 F.3d 63 (2d Cir. 2000)................................................................23

*In re Smith Barney Transfer Agent Litig.*,
    765 F. Supp. 2d 391 (S.D.N.Y. 2011)................................................................24

*Sun Prods. Corp. v. Bruch*,
  2011 WL 5120307 (S.D.N.Y. Oct. 28, 2011) ..........................................................24

*Tony Shafrazi Gallery Inc. v. Christie's Inc.*,
  2009 WL 1433049 (Sup. Ct. N.Y. Cnty. Apr. 14, 2009)........................................23

*Transp. Workers Union, Local 100 v. N.Y.C. Transit Auth.*,
  358 F. Supp. 2d 347 (S.D.N.Y.2005).......................................................................25

*In re Wash. Mutual, Inc.*,
  461 B.R. 200 (Bankr. D. Del. 2011) ........................................................................22

**Statutes**

11 U.S.C. § 502........................................................................................... *passim*

11 U.S.C. § 510........................................................................................................14

28 U.S.C. § 158............................................................................................ *passim*

28 U.S.C. § 1292(b) .............................................................................................6, 18

Fed. R. Bankr. P. 8001 ...............................................................................................1

Fed. R. Bankr. P. 8003 ...............................................................................................1

**Other Authorities**

Charles A. Wright et al., Federal Practice & Procedure (2d ed. 2012).............15, 17, 19

Restatement (Second) Torts § 531 ............................................................................23

Plaintiffs-Appellants Harbinger Capital Partners LLC, HGW US Holding Company LP, Blue Line DZM Corp., and Harbinger Capital Partners SP, Inc. (collectively, "Harbinger") respectfully submit this memorandum of law in support of their motion pursuant to 28 U.S.C. § 158 and Rules 8001 and 8003 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") for leave to appeal, to the extent not appealable as of right, from the order of the U.S. Bankruptcy Court, Southern District of New York, dated November 14, 2013 (Ex. A ("Order")[3] and decision dated November 21, 2013 (Ex. B ("Decision" or "Dec.")), in the adversary proceeding captioned *Harbinger Capital Partners LLC, et al., v. Ergen, et al.* (Bankr. S.D.N.Y. Case No. 12-12080 (SCC); Adv. Proc. No. 13-1390 (SCC)), granting the motions to dismiss filed by defendants (a) DISH Network Corporation ("DISH"), EchoStar Corporation ("EchoStar"), and L-Band Acquisition, LLC ("LBAC" and with DISH and EchoStar, the "DISH/EchoStar Defendants"); (b) Charles W. Ergen, SP Special Opportunities LLC ("SPSO"), and Special Opportunities Holdings LLC ("SO Holdings" and with Ergen and SPSO, the "Ergen Defendants"); and (c) Sound Point Capital Management LP ("Sound Point") and Stephen Ketchum (the "Sound Point Defendants") (collectively, "Defendants"), and dismissing Harbinger's amended complaint (Ex. C ("Amended Complaint" or "Am. Compl.")).

### STATEMENT OF ISSUES ON APPEAL AND RELIEF REQUESTED

1.      Did the Bankruptcy Court err in holding as a matter of law that the remedy of equitable disallowance of a creditor's claim "is not permitted under the Bankruptcy Code," even though courts in this District and elsewhere have recognized the existence of this remedy and allowed claims for equitable allowance to survive motions to dismiss?

---

[3]      Exhibit citations (in the form "Ex. __") are to the exhibits accompanying the Declaration of Jed I. Bergman, dated December 2, 2013, and filed contemporaneously herewith.

2. Did the Bankruptcy Court err in concluding as a matter of law that Harbinger, as controlling equity-holder of the debtors (collectively, "LightSquared"), could not have relied on Defendants' fraudulent misrepresentations to LightSquared, even though Harbinger alleged that Defendants knew that LightSquared would communicate those misrepresentations to Harbinger and intended that Harbinger would rely on those misrepresentations, and that Harbinger did in fact so rely?

3. Did the Bankruptcy Court err in finding that Harbinger could not maintain a fraud claim because the misrepresentations at issue, in which Defendant SPSO falsely claimed to be an "Eligible Assignee" under the subject Credit Agreement, could only be asserted as a contract breach-of-contract claim by LightSquared, as a party to the Credit Agreement?

4. Did the Bankruptcy Court err in concluding that Harbinger lacked standing to assert direct claims for fraud, tortious interference, and unfair competition because any such claims belonged exclusively to LightSquared?

Harbinger respectfully submits that the answer to each of the foregoing question is "Yes," that the Bankruptcy Court did err in reaching the above conclusions, and that its Decision and Order should be reversed and remanded for further proceedings.

## PRELIMINARY STATEMENT

Harbinger brings this motion for leave to appeal from the Order and related Decision of the Bankruptcy Court that granted all Defendants' motions to dismiss its Amended Complaint. Although Harbinger believes that the Decision and Order are final orders of the Bankruptcy Court that are appealable as of right under 28 U.S.C. § 158(a)(1), it brings this motion in an abundance of caution and in the alternative, for leave to appeal under 28 U.S.C. § 158(a)(3). By allowing an immediate appeal, this Court can rectify dispositive errors of controlling bankruptcy

2

and New York law, allow Harbinger to pursue its claims with LightSquared related claims --
now pending in the Bankruptcy Court -- and avoid wasteful and inefficient piecemeal litigation.

The adversary proceeding underlying this appeal arises from a dispute over the control of
LightSquared, an innovative satellite-and-terrestrial wireless-services company that is currently
in bankruptcy (the "Chapter 11 Cases"), and the disposition of its enormously valuable wireless
spectrum licenses. Harbinger is LightSquared's controlling shareholder, and has invested
billions of dollars, significant labor, expertise, and other resources in LightSquared. In the
Chapter 11 Cases, Harbinger has sought, and continues to seek, to pursue a reorganization of
LightSquared that would allow it to retain control of the company in order to best maximize
value for all stakeholders.

The Defendants -- satellite mogul Charles Ergen, several companies that he controls,
including DISH and EchoStar, and other Defendants acting at their behest -- have attempted to
capitalize on LightSquared's bankruptcy to buy up the spectrum assets at distressed prices for the
benefit of DISH and EchoStar. With Ergen as their controlling shareholder and Executive
Chairman, DISH and EchoStar have repeatedly in the past pursued spectrum assets in distressed
companies in the past in order to expand their own wireless business. As alleged more fully in
the Amended Complaint, Defendants wished to take a page from DISH and EchoStar's playbook
by buying up a blocking position in the secured debt of LightSquared LP (the "Loan Debt"), then
using that position to ensure that their bid for LightSquared's spectrum prevailed.

In this case, however, that strategy was blocked by a provision in LightSquared's Credit
Agreement that prohibited transferring the Loan Debt to "Disqualified Companies," including

any "subsidiary thereof."[4]  Because both DISH and EchoStar were Disqualified Companies, Ergen resolved to acquire the debt on their behalf surreptitiously, through a shill.  This newly created special-purpose entity, Defendant SPSO, secretly acquired over a billion dollars in Loan Debt.  In doing so, however, SPSO was required to, and did, represent repeatedly in writing that it was *not* a Disqualified Company.  That representation was false, because SPSO was a "subsidiary" of DISH and EchoStar:  SPSO is controlled entirely by Ergen, who as Executive Chairman of DISH and EchoStar is their agent, and was acting within the scope of his authority in buying up the Loan Debt to aid these companies' acquisition of spectrum.  SPSO's acquisition of the Loan Debt was thus a fraud, committed by Ergen as agent for DISH and EchoStar.

Once that aspect of his plan had been accomplished, Ergen used another subsidiary, Defendant LBAC, to make a bid for the spectrum assets that fell far short of their long-term value.  And to close the loop, Ergen caused DISH to buy LBAC from him for $1 and then caused SPSO to support the LBAC bid.  As a result, despite the explicit restrictions on DISH (or EchoStar) owning the Loan Debt, DISH now receives the strategic and voting benefits of SPSO's Loan Debt holdings and, if its bid is successful, would end up covering the cost of acquiring that debt by reimbursing Ergen's purchases in full.

Although LightSquared itself was plainly injured by this improper end-run around the contractual protections embodied in the Credit Agreement, Harbinger was injured as well.  Indeed, the Amended Complaint alleges that even though it is not a party to the Credit Agreement, *Harbinger* was the intended and deliberate target of SPSO's misrepresentations that it was not a "Disqualified Company."  Harbinger relied on those misrepresentations and did not seek to prevent Ergen, through SPSO, from accumulating the blocking position that he now

---

[4]        "Credit Agreement" as defined herein refers to that certain Credit Agreement, dated as of October 1, 2010, between and among LightSquared LP, a direct subsidiary of LightSquared, UBS as "Agent" and the entities that from time to time would serve as "Lenders" (as defined therein).

holds.  Through that fraud and additional wrongdoing, Ergen and the other Defendants obtained a blocking position in the Loan Debt, derailed Harbinger's own negotiations as to a plan of reorganization that would have repaid all creditors in full and destroyed Harbinger's ability to raise the exit financing that would have supported that plan.

Harbinger brought this adversary proceeding to seek redress for that harm.  Its Amended Complaint asserted claims under New York law for fraud, tortious interference, and unfair competition, as well as aiding and abetting and civil conspiracy.  The Amended Complaint also asserted an objection to SPSO's claim under 11 U.S.C. § 502, and a claim for equitable disallowance.  LightSquared intervened in the action to the limited extent of joining the equitable disallowance and Section 502 claims.  All Defendants moved to dismiss Harbinger's complaint, and filed supplemental briefing addressing those motions to the Amended Complaint as well.

The Bankruptcy Court dismissed all of Harbinger's claims.  In its Order and subsequent Decision, the Bankruptcy Court found, first, that equitable disallowance -- a remedy that has been recognized by numerous courts in this District and elsewhere -- is not available as a matter of law.  The Bankruptcy Court thus dismissed that claim with prejudice.  Next, the Bankruptcy Court proceeded to find that Harbinger lacked standing to assert its tort claims, which it held properly belonged to LightSquared.  The Bankruptcy Court made clear these claims were dismissed without prejudice to being asserted *by LightSquared* but that Harbinger itself could not assert such claims.  The Bankruptcy Court granted Harbinger leave to amend, but solely in order to assert a claim objection under 11 U.S.C. § 502 -- an objection that is not personal to Harbinger, but can be asserted by any party in interest.

As shown below, Harbinger believes that the Decision and Order were final and are appealable as of right under 28 U.S.C. § 158(a).  The Bankruptcy Court dismissed all of

Harbinger's claims in their entirety, granting leave to amend only to assert a statutory objection to SPSO's claim. That "objection" does not undercut the finality of the Decision and Order. Nor does the nominally "without prejudice" nature of the dismissal, which the Bankruptcy Court made clear meant only that the dismissal was without prejudice to *LightSquared's* rights to assert its own claims. Particularly given the broader definition of finality that applies in the bankruptcy context, the Decision and Order were "final," and thus appealable as of right. *See* Point I, *infra*.

In the alternative, Harbinger respectfully seeks leave to appeal under 28 U.S.C. § 158(a)(3). Courts entertaining motions for leave to appeal from bankruptcy court decisions commonly apply the three-part test for interlocutory appeals under 28 U.S.C. § 1292(b), and Harbinger easily satisfies each of those three elements. *First*, this appeal presents controlling questions of law, including whether equitable disallowance is ever available as a remedy and whether New York law allows a controlling shareholder and intended victim of fraud to seek redress in its own right for such wrongdoing. *Second*, there is substantial ground for difference of opinion as to these questions. Indeed, as shown below, the Bankruptcy Court's Decision and Order disregarded existing precedent and well-settled New York law. *Third*, allowing an appeal at this time would materially advance the termination of this litigation by clarifying the correct legal standards and allowing Harbinger to pursue its own claims together with LightSquared's -- which are now pending in the Bankruptcy Court -- rather than forcing Harbinger to sit on the sidelines for now, only to engage in a second, inefficient, and duplicative litigation arising out of the same underlying facts. *See* Point II, *infra*.

## BACKGROUND

### A. LightSquared's Bankruptcy Proceedings.

Harbinger, which indirectly owns over 82% of LightSquared's equity, has invested significant capital and labor over the course of many years to develop, through LightSquared, a

revolutionary, next-generation network ("ATC Network") that would employ both satellites and ground-based antennas to provide nationwide state-of-the-art mobile broadband services. Ex. C (Am. Compl.) ¶¶ 29-30.

In May 2012, following the FCC's issuance of a notice proposing to suspend indefinitely LightSquared's authorization to build out its ATC Network, LightSquared commenced the Chapter 11 Cases. *Id.* ¶¶ 33-34.

### B.    Harbinger's Claims.

Harbinger filed its original complaint on August 6, 2013, and an Amended Complaint thereafter as of right. As mentioned above, the Amended Complaint sought relief for a fraudulent scheme masterminded by Charles Ergen, the controlling shareholder and Executive Chairman of DISH and EchoStar, as part of his ongoing efforts on their behalf to buy up spectrum and network infrastructure, typically from distressed companies. *Id.* ¶¶ 36-37, 83-87.

At the heart of Ergen's scheme was a fraud: DISH and EchoStar could not purchase the Loan Debt directly because they were "Disqualified Companies" under the Credit Agreement, so Ergen -- working closely with his long-time bankers, the Sound Point Defendants -- arranged to buy up the Loan Debt on their behalf through SPSO, which repeatedly represented in writing that it was not a "Disqualified Company," but an "Eligible Assignee." In fact, SPSO was not an Eligible Assignee. Its written representations to the contrary were false. *Id.* ¶¶ 37-38, 40, 43, 56.

As Ergen was well aware, the Credit Agreement restricts the transfer of Loan Debt not only to "Disqualified Companies" like DISH and EchoStar, but also to any "subsidiary" of such companies -- a term that, particularly under the Credit Agreement's broad definition, includes SPSO. SPSO is a "subsidiary" of DISH and EchoStar because it is controlled by Ergen, who as DISH and EchoStar's senior officer and Executive Chairman is their agent, and in that capacity exercises control over SPSO on their behalf. Indeed, because Ergen also controls DISH and

7

EchoStar's spectrum-acquisition initiatives, he can decide that DISH and EchoStar would benefit from acquiring LightSquared's spectrum; then he can act on their behalf in his capacity as Executive Chairman and direct SPSO to assist their efforts by buying up the Loan Debt. Thus, SPSO is DISH and EchoStar's "subsidiary," and hence *not* an "Eligible Assignee." *Id.* ¶¶ 42-43.

Through these fraudulent misrepresentations, Ergen caused SPSO to accumulate over $1 billion in Loan Debt on behalf of DISH and EchoStar. Harbinger, which closely monitored the "Eligible Assignee" representations and associated documentation that was provided to LightSquared's agent UBS, relied on SPSO's representations and allowed it to amass that blocking position. Press reports speculated that Ergen was behind SPSO, but also surmised that the culprit was Carlos Slim, Cablevision's Dolan family, or others. Harbinger and its advisors did their best to uncover the truth, but were stonewalled by Defendants. *Id.* ¶¶ 55, 57-58.

It was not until late May 2013 that SPSO -- at the behest of the Bankruptcy Court -- finally revealed the truth. By that time, of course, the damage was done: SPSO was the single largest holder of Loan Debt, and was perfectly positioned to block a Harbinger plan, propose a plan of its own, and help snap up LightSquared's spectrum for DISH and EchoStar. *Id.* ¶¶ 59-60.

But Ergen's misconduct did not stop at fraud. As alleged at length in the Amended Complaint, Ergen also caused SPSO to enter into -- but not to close, for months -- hundreds of millions of dollars in Loan Debt trades with key LightSquared creditors, including several who were also likely sources of exit financing. Ergen entered into these trades for tactical reasons, with no intention of closing them seasonably as per normal commercial practice. And in fact, these "hung trades" sidelined the creditors during LightSquared's exclusivity period, causing Harbinger plan, negotiations and related financing to fail. *Id.* ¶¶ 64-67.

Ergen also interfered with Harbinger's efforts to line up exit financing for LightSquared during this time by causing SPSO to enter into bundled "back-to-back" purchases of Loan Debt and LightSquared preferred securities with Jefferies LLC ("Jefferies"), which purchases Ergen knew SPSO was not authorized to close and never intended to close. Although Jefferies had been "highly confident" in its ability to raise the exit financing for LightSquared -- and even though Harbinger had agreed to pay Jefferies $80 million in associated fees -- the busted "back-to-back" trades left Jefferies unable to do so. *Id.* ¶¶ 69, 119.

Finally, having infiltrated LightSquared's capital structure and stymied Harbinger's own negotiations, Ergen sprung the trap: through LBAC, he caused DISH to submit a low-ball bid for LightSquared's spectrum assets and leak that bid to the press. *Id.* ¶¶ 74-75. In a telling sign that Ergen is controlling SPSO on DISH's behalf, once SPSO took control of the Ad Hoc Secured Group of LightSquared LP's lenders (the "Ad Hoc Secured Group"), it used that control to propound a plan (the "SPSO Plan"), in which LBAC serves as stalking horse bidder and presumptive purchaser. Thus, Ergen now stands poised not only to capture the very prize he sought for DISH and EchoStar -- LightSquared's spectrum assets -- but also to reap a windfall by having DISH repay all of SPSO's discounted purchases of Loan Debt at par. *Id.* ¶ 78.

Based on these extensive allegations of wrongdoing, Harbinger's Amended Complaint asserted claims against (a) SPSO for claim disallowance under 11 U.S.C. § 502 and for equitable disallowance; (b) the DISH/EchoStar Defendants and the Ergen Defendants for fraud, tortious interference, unfair competition, and civil conspiracy; and (c) the Sound Point Defendants for aiding and abetting fraud, unfair competition, and civil conspiracy. On August 22, 2013, LightSquared intervened in the Adversary Proceeding on limited grounds.[5]

---

[5] *LightSquared's Notice of Intervention*, dated August 22, 2013 [Dkt. No. 15]. A number of creditors also intervened. *See Intervention of U.S. Bank National Association and Mast Capital Management, LLC*, dated August

On September 9, 2013, Defendants moved to dismiss Harbinger's complaint in its entirety. After, Harbinger filed its Amended Complaint, Defendants filed supplemental papers asserting that the Amended Complaint failed on the same grounds as the original complaint.

### C. The Bankruptcy Court's Decision And Order.

After hearing argument on October 29, 2013, the Bankruptcy Court ruled from the bench, dismissing Harbinger's claims and stating that an opinion would follow. Ex. D ("11/29/13 Transcript") at 133:7-17. On November 14, 2013, the Bankruptcy Court issued the Order embodying its bench ruling which: (1) dismissed Harbinger's Amended Complaint in its entirety; (2) granted Harbinger leave to file a Second Amended Complaint setting forth an objection to SPSO's claim pursuant to § 502 of the Bankruptcy Code; (3) ordered Harbinger's equitable disallowance claim dismissed with prejudice, both as to Harbinger and as to any intervenors, including LightSquared; and (4) acknowledged the right of LightSquared, to file its own complaint-in-intervention consistent with the Order. *See* Ex. A (Order) at 1-2.

On November 21, 2013, the Bankruptcy Court issued its Decision, setting forth the grounds upon which its Order was based. With respect to Harbinger's claim for equitable disallowance, the Bankruptcy Court held that:

> In analyzing whether there exists a basis for equitable disallowance under the Bankruptcy Code, the Court must first turn to the relevant sections of the Bankruptcy Code. The words "equitable disallowance" do not appear anywhere in the Bankruptcy Code, nor was the remedy of equitable disallowance included in the text of the Bankruptcy Act. Accordingly, we must first turn to the provision of the Code dealing with the allowance of claims - section 502 - and also examine the provision most closely linked to the concept of equitable disallowance - section 510(c).

Ex. B (Decision) at 14. The Court went on to note that:

---

22, 2013 [Dkt. No. 12]; *Notice of Intervention of the Ad Hoc Secured Group of LightSquared LP Lenders*, dated August 22, 2013 [Dkt. No. 14]

> Other than *Pepper v. Litton* [308 U.S. 295 (1939)], which was
> decided under the Bankruptcy Act, no Bankruptcy Code case has
> been cited to the Court in which the claim of a creditor has been
> equitably disallowed. While courts in this District and others have
> permitted claims for equitable disallowance to survive motions to
> dismiss, no court has ever employed equitable disallowance as a
> remedy or sanction under the Bankruptcy Code.

*Id.* at 17. Based on its analysis of applicable statutes and caselaw, the Bankruptcy Court held:

> With enormous respect to those courts who have held to the
> contrary, this Court holds that the Bankruptcy Code, pursuant to
> section 510(c) or otherwise, does not permit equitable
> disallowance of claims that are otherwise allowable under section
> 502(b) of the Bankruptcy Code.

*Id.* at 20. Accordingly, the Court held that "equitable disallowance is not permitted under the

Bankruptcy Code," and dismissed Harbinger's claim for equitable disallowance. *Id.* at 26; Ex. A

(Order) at 2. The Bankruptcy Court's Order also held that the dismissal was "with prejudice" as

to LightSquared, and any to other party that had intervened in this case. Ex. A (Order) at 2.

With respect to Harbinger's fraud claim, the Bankruptcy Court held that:

> Harbinger did not have the right to rely on any representations or
> omissions made with respect to the Loan Debt, as it was not a party
> to the Credit Agreement or a counterparty to the trades of Loan
> Debt; that was the Debtors' right, and responsibility. . . .
>
> Moreover, any claim relating to the alleged violation of the Credit
> Agreement by SPSO in purchasing the Loan Debt is most
> fundamentally a breach of contract claim, and, as such, can only be
> asserted  by a party to the Credit Agreement; here, LightSquared.

Ex. B (Decision) at 36-37. Similarly, the Bankruptcy Court found that no affirmative duty to

disclose Ergen's deceptive conduct could have been owed to Harbinger, because

> Harbinger and the Ergen/DISH Defendants are not parties to a
> 'business transaction' such that a duty to disclose would arise on
> the part of any of the Ergen/DISH Defendants. Harbinger is not a

party to the Credit Agreement and was not a counterparty to any of the trades of Loan Debt . . . . Moreover, even if information regarding SPSO's status was not 'readily available' to Harbinger, because Harbinger was not a counterparty to a transaction with the Ergen/DISH Defendants, such Defendants had not reason to consider whether Harbinger, or any other party, was acting on the basis of mistaken knowledge.

*Id.* at 33-34.

With respect to Harbinger's tortious interference claim, the Bankruptcy Court held that:

Harbinger has not pled any facts that establish that it had an independent and protectable relationship with the Debtors' creditors or with Jefferies, or a protectable interest in or right to negotiate with the Debtors' creditors during the Debtors' exclusivity period. Not for the first time in these Bankruptcy Cases, Harbinger conflates its interests with those of the Debtors. . . . If there is a viable cause of action based on these allegations, it belongs to the Debtors, not to Harbinger.

*Id.* at 40. Similarly, as to Harbinger's unfair competition claim, the Bankruptcy Court stated:

Harbinger fails to plead allegations sufficient to support its theory that its "control rights" over the Debtors have been wrongfully misappropriated. . . . Harbinger does not have a right or protectable interest that it can assert as a basis to bring these causes of action based in tort. Any such claims, if they exist, belong to the Debtors. Similarly, Harbinger does not have (and has not pled) "a protectable commercial advantage in exercising control rights over the Debtors" . . . once the Debtors sought chapter 11 bankruptcy protection.

*Id.* at 42-43.

**D. Additional Proceedings In The Bankruptcy Court.**

Concurrently with this adversary proceeding, four separate plans of reorganization are pending before the Court in the Chapter 11 Cases. Three of these plans, including the SPSO Plan, contemplate a sale of some or all of LightSquared's assets. The fourth plan, proposed by Harbinger, contemplates a reorganization of LightSquared's business without an asset sale.

On October 10, 2013, the Court approved each of the disclosure statements with respect to the four plans and the plan proponents are now soliciting votes from eligible creditors and interest holders. An auction relating to the three sale plans is currently scheduled for December 11, 2013, objections to confirmation are due on December 30, 2013, and the hearing on confirmation is scheduled to commence on January 9, 2014.

On November 15, 2013, LightSquared filed a Complaint-in-Intervention in this adversary proceeding. *See* Ex. E ("LightSquared's Complaint"). LightSquared's Complaint seeks (1) a declaratory judgment that SPSO was not an "Eligible Assignee" under the Credit Agreement; (2) damages for breach of contract against SPSO; (3) disallowance of SPSO's claim under § 502 of the Bankruptcy Code; (4) equitable disallowance against SPSO; and (5) damages for tortious interference with contractual relations against SPSO, DISH, EchoStar, and Ergen. Motions to dismiss the LightSquared Complaint are currently pending in the Bankruptcy Court.

On December 2, 2013, in accordance with the Order, Harbinger filed a limited Second Amended Complaint. *See* Ex. F ("Second Amended Complaint" or "SAC"). The Second Amended Complaint does not assert direct claims in Harbinger's own right. Rather, it repeats and amplifies the allegations in LightSquared's Complaint based on additional discovery to date, and asserts claims of the bankruptcy estate for disallowance and equitable subordination, under §§ 502 and 510 of the Bankruptcy Code, against SPSO.[6]

## ARGUMENT

## I.  THE DECISION AND ORDER ARE APPEALABLE AS OF RIGHT.

Harbinger respectfully submits that the Order is appealable as of right as a final order under 28 U.S.C. § 158(a). The Order disposed of all of Harbinger's claims, granting it leave to

---

[6]  *See* Ex. F (SAC) at 1 ("Harbinger brings these claims not to seek redress for direct harm to itself, but as a party-in-interest in these proceedings").

amend solely to assert a claim objection under section 502 of the Bankruptcy Code (Ex. A (Order) at 2) -- an objection that is not personal to Harbinger, but can be asserted by any party in interest. Thus, the Order effectively terminated Harbinger's own claims in the adversary proceeding. That is sufficient to render the order "final," particularly because "finality in bankruptcy jurisdiction is viewed more broadly than in other contexts." *Pal Family Trust v. Ticor Title Ins.*, 490 B.R. 480, 483 (S.D.N.Y. 2013).

As the Second Circuit has explained, finality for purposes of a bankruptcy appeal is "more flexible than in ordinary civil litigation, because bankruptcy proceedings often continue for long periods of time and discrete claims are resolved from time to time over the course of the bankruptcy proceeding." *Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.)*, 101 F.3d 882, 885 (2d Cir. 1996). A bankruptcy court's order is "final" if it "'completely resolve[s] all of the issues pertaining to a discrete claim, including issues as to the proper relief.'" *Id.* at 885 (quoting *In re Prudential Lines, Inc.*, 59 F.3d 327, 331 (2d Cir. 1995) (citation omitted)). "The order need not resolve all the issues raised by the bankruptcy, but it must completely resolve all of the issues pertaining to a discrete claim, including issues as to proper relief." *In re Integrated Resources, Inc.*, 3 F.3d 49, 53 (2d Cir. 1993). *See also Liquidators of Lehman Bros. Australia Ltd. v. Lehman Bros. Special Fin. (In re Lehman Bros. Holdings Inc.)*, 697 F.3d 74, 76-77 (2d Cir. 2012) (citing "pragmatic approach to finality" in the bankruptcy context) (internal quotations omitted); 16 Charles Alan Wright, Arthur Miller, & Edward H. Cooper, Federal Practice and Procedure § 3926.2 (2d ed. 2012) ("Virtually all decisions agree that the concept of finality applied to appeals in bankruptcy is broader and more flexible than the concept applied in ordinary civil litigation."). Because the Order effectively disposed of Harbinger's claims, it was a final order and is appealable as of right.

The fact that most of Harbinger's claims were ostensibly dismissed without prejudice does not alter that conclusion. Well-settled Second Circuit law holds that even a dismissal without prejudice gives rise to an appealable final order. *See generally Pal Family Trust*, 490 B.R. at 484-85 (finding order final and appealable, even though dismissal was without prejudice); *see also Allied Air Freight, Inc. v. Pan Am. World Airways, Inc.*, 393 F.2d 441, 444 (2d Cir. 1968) ("dismissals with and without prejudice are equally appealable as final orders"); *In re Emerald Casino, Inc.*, 334 B.R. 378, 385 (N.D. Ill. 2005) (explaining that "[e]ven though the bankruptcy court dismissed the complaint without prejudice, given its holding, no reasonably anticipated amendment to the Complaint would change the bankruptcy court's ruling," and therefore considering the dismissal to be final for jurisdictional purposes), *aff'd sub nom.*, *Vill. of Rosemont v. Jaffee*, 482 F.3d 926 (7th Cir. 2007).

In this case, the Bankruptcy Court plainly believed that Harbinger itself could not put forth a viable amended complaint. Following oral argument, for example, the Bankruptcy Court stated that "based on what I have before me now, *I can't imagine a set of facts similar to the ones that have been pleaded now in which Harbinger could reassert claims against DISH or EchoStar*." Ex. D (10/29/13 Tr.) at 132-24-133:2 (emphasis added); *see also id.* 128:16-129:6; 131:19-132:10; 132:18-133:2. Similarly, in its Decision, the Bankruptcy Court treated Harbinger's claims as if they had been dismissed with prejudice, and explained that "*the Debtors are granted leave to plead and file an amended complaint in this Adversary Proceeding against any or all of the Defendants reflecting causes of action not inconsistent with this Decision*." Ex. B (Decision) at 48-49. Just as in *Pal,* 490 B.R. 480, where no leave to amend the complaint was granted, here Harbinger was granted leave to amend only to the very limited extent of "setting forth an objection pursuant to Section 502 of the Bankruptcy Code." Ex. A (Order) at 2.

Finally, the fact that LightSquared continues to prosecute its own claims -- or that Harbinger's Second Amended Complaint supports those claims with additional allegations of fact and statutory objections -- does not defeat appealability. LightSquared's claims and Harbinger's claims are distinct, and Harbinger does not stand to recover for its own damages through its Second Amended Complaint. *See* Ex. F (SAC) ¶¶ 146-75. The fact that LightSquared originally opted to intervene in this case, rather than commencing an adversary proceeding of its own, does not mean that the disposition of *Harbinger's* claims is anything other than final. Plainly, even though LightSquared continues to prosecute its claims, the Decision and Order "completely resolved all of the issues pertaining to [Harbinger's] discrete claim, including issues as to the proper relief." *Pegasus Agency, Inc.,* 101 F.3d at 885 (internal quotations omitted). Accordingly, the Decision and Order are "final" under 28 U.S.C. § 158(a), and appealable as of right.

## II. ALTERNATIVELY, THIS COURT SHOULD GRANT LEAVE TO APPEAL.

Alternatively, this Court should grant leave to appeal under 28 U.S.C. § 158(a)(3), which provides this Court jurisdiction to hear appeals with leave of court, from interlocutory orders and decrees. *Id.* Here, the Bankruptcy Court's misapplication of controlling law in its Decision and Order, and the benefits in resolving the issues presented on appeal before substantially similarly issues and facts are adjudicated in the Bankruptcy Court, present valid grounds upon which leave to appeal should be granted.

Although neither the Bankruptcy Code nor the Federal Rules of Bankruptcy provide a specific standard, motions for "[l]eave[] to appeal interlocutory orders of the Bankruptcy Court are to be granted upon consideration of the standards set forth in 28 U.S.C. § 1292(b)." *Robinson v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 45 B.R. 833, 835 (S.D.N.Y.1984). Under 28 U.S.C. § 1292(b), leave to appeal may be granted if the order being

16

appealed from (1) "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."

Courts regularly grant petitions for interlocutory review when these criteria are satisfied. *See, e.g.*, *NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172 (2d Cir. 2011); *Doninger v. Niehoff*, 642 F.3d 334 (2d Cir. 2011); *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111 (2d Cir. 2010); *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173 (2d Cir. 2009). Harbinger's motion readily satisfies these standards, and leave to appeal should be granted.

### A.     Harbinger's Appeal Presents Controlling Questions Of Law.

The Bankruptcy Court's dismissal of Harbinger's claims involves controlling issues of law that can, and should, be resolved on an immediate appeal. "To establish that an order contains a controlling question of law, it must be shown that either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation" *N. Fork Bank v. Abelson,* 207 B.R. 382, 389 (E.D.N.Y. 1997) (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (rejecting that in order to be "controlling question of law," resolution of the issue on appeal must have precedential value for a large number of pending cases)). Additionally, the legal issues must "refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly" without having to comb the record. *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, 2006 WL 2548592, at *4 (S.D.N.Y. Sept. 5, 2006) ("[t]he question must also be 'controlling' in the sense that . . . at a minimum that determination of the issue on appeal would materially affect the litigation's outcome.") Thus, an appellate issue is controlling if "interlocutory reversal might save time for the district court, and time and expense for the litigants" or when reversal would "speed the District Court's consideration of the merits of the

parties' claims or defenses." *See* 16 Charles A. Wright et al., Federal Practice & Procedure §

3930 (2d ed. 2012); *see also Retirement Bd. of Policemen's Annuity and Benefit Fund of the City*

*of Chicago v. Bank of New York Mellon*, 2013 WL 593766, at *5 (S.D.N.Y. Feb. 14, 2013) (issue

of law controlling because "even though not resulting in dismissal, could significantly affect the

conduct of the action).

  As shown below, each of the questions as to which Harbinger seeks leave to appeal is a

controlling question of law. All were decided purely as a matter of law, on the face of the

pleading, without requiring detailed parsing of the record. This Court can do the same.

  *First*, the Bankruptcy Court's holding that equitable disallowance is not a valid remedy or

cause of action is manifestly a controlling question of law. It is a pure question of law that the

Bankruptcy Court analyzed and decided, without any regard for the specific facts alleged by

Harbinger. The only issue in dispute is whether a *legal* basis for such a claim exists. The

bankruptcy court's dismissal of the equitable disallowance claim is also "controlling," because if

this Court determines that equitable disallowance is a permissible claim, then Harbinger is

entitled to pursue it here.

  *Second*, whether Harbinger was entitled to rely on Defendants' misrepresentations

presents a controlling question of law as well. The Bankruptcy Court's conclusion that

"Harbinger did not have the right to rely on any representations or omissions made with respect

to the Loan Debt, as it was not a party to the Credit Agreement or a counterparty to the trades of

Loan Debt; that was the Debtors' right, and responsibility" (Ex. B (Decision) at 36), did not

involve findings of fact and this Court can review that determination as a pure matter of law.

  *Third*, a controlling question of law is presented as to whether a non-party to a contract

can assert a claim for fraud based on conduct that is also, separately, a breach of contract. The

Bankruptcy Court held that "any claim relating to the alleged violation of the Credit Agreement by SPSO in purchasing the Loan Debt is most fundamentally a breach of contract claim, and as such, can only be asserted by a party to the Credit Agreement; here LightSquared." Ex. B (Decision) at 37. Here too, that is not a factual determination, but one that can be reviewed leally without extensive review of the record.

*Finally*, Harbinger presents a controlling question of law with respect to its tortious interference and unfair competition claims, which the Bankruptcy Court dismissed because it found that Harbinger "conflates its interests with those of the Debtors," and "thinks it is entitled to negotiate with the Ad Hoc Secured Group." Ex. B (Decision) at 40; *see also id*. at 42, 43. Again, this issue involves the general application of legal principles. It does not require a determination of fact, and it does not require the Court to comb the record to reach a decision.

Moreover, the determination of these issues on appeal would "materially affect the outcome of the litigation." *See N. Fork Bank*, 207 B.R. at 389. The dismissal of Harbinger's equitable disallowance and tort claims effectively deprived it of the ability to achieve redress for the injuries caused by Defendants' wrongdoing. Requiring Harbinger to wait to bring this appeal until LightSquared's intervenor claims in the current adversary proceeding are concluded, will result in Harbinger being deprived of its equity interests and control over LightSquared -- injuries that are separate and apart from LightSquared's injuries. Accordingly, the four issues raised by Harbinger on this appeal present controlling issues of law that led directly to the dismissal of Harbinger's claims, and upon reversal, would allow those claims to proceed which would have a tremendous impact on the outcome of the litigation.

### B. There Is Substantial Ground For Difference Of Opinion.

A question of law presents substantial grounds for difference of opinion where courts disagree on the question to be certified for appeal. *In re Enron Corp.*, 2006 WL 2548592, at *1

(granting leave to appeal). *See also Allstate Ins. Co. v. Elzanaty*, 2013 WL 2154759, at *5 (E.D.N.Y. May 16, 2013) (finding substantial ground for a difference of opinion sufficient to warrant interlocutory appeal where defendants disagreed with the court's decision to extend common law to cover plaintiffs' claim and not look instead to statutory authority). There should be "genuine doubt as to whether the Bankruptcy Court applied the correct standard." *Id.* at *4. Here, each of the four questions presented meets this test.

### 1. Equitable Disallowance

The Bankruptcy Court's holding that equitable disallowance is not a valid claim addressed a dispositive legal question that remains unresolved by the Second Circuit. Despite concluding that equitable disallowance was not a valid claim, the Bankruptcy Court itself acknowledged that prior courts have reached the opposite conclusion.

Specifically, the Bankruptcy Court acknowledged that "[c]ourts analyzing the question of equitable disallowance have most frequently focused on *Pepper v. Litton*, a storied 1939 case in which the Supreme Court affirmed a district court's equitable disallowance of the claim of an insider of the debtor." Ex. B (Decision) at 15. Although the Supreme Court recognized the equitable disallowance of a claim under the Bankruptcy Act, the Bankruptcy Court downplayed the significance of the decision, concluding that the "Supreme Court's holding in *Pepper* did not directly address whether such a remedy exists with respect to a claim that has a valid basis under applicable law but against which a party brings an equitable attack." *Id.* at 17.

The Court also downplayed the significance of the bankruptcy court's decision in *Adelphia Communs. Corp. v. Bank of Am., N.A. (In re Adelphia Communs. Corp.)*, 365 B.R. 24 (Bankr. S.D.N.Y. 2007), even though that decision was affirmed by the district court in *Adelphia Recovery Trust v. Bank of Am., N.A.*, 390 B.R. 64 (S.D.N.Y. 2008). The Bankruptcy Court focused on the fact that in *Adelphia*, the bankruptcy court merely denied a motion to dismiss a

20

claim for equitable disallowance, noting that other than *Pepper*, "no court has ever employed equitable disallowance as a remedy or sanction under the Bankruptcy Code." Ex. B (Decision) at 17. Although true, this cannot detract from the fact that the *Adelphia* courts, including the District Court, sustained the validity of a claim for equitable disallowance.[7]

For similar reasons, the Bankruptcy Court also discounted the decision in *In re Wash. Mutual, Inc.*, 461 B.R. 200, 256-59 (Bankr. D. Del. 2011), on the basis that it appeared that the claim there was otherwise invalid and disallowable on section 502(b) grounds. Ex. B (Decision) at 17. However, in *Wash. Mutual*, the court simply determined that an equity committee could assert a claim for equitable disallowance; if the claim did not exist, the court never would have permitted the assertion of the claim.

As these authorities make clear, there is substantial ground for difference of opinion over whether the Bankruptcy Court correctly dismissed Harbinger's equitable disallowance claim.

### 2. Reliance

The Bankruptcy Court erroneously ruled as a matter of law -- *without citing to any legal support whatsoever* -- that Harbinger did not have a right to rely on Defendants' misrepresentations or omissions because it was not a party to the Credit Agreement. Ex. B (Decision) at 36. The Bankruptcy Court's ruling, however, conflicts with well-established New York law that a plaintiff need not be in privity of contract with the Defendant to prove reliance on a fraudulent misrepresentation. *Cochran v. Channing Corp.*, 211 F. Supp. 239, 246 (S.D.N.Y. 1962) (recognizing "when fraud is alleged direct privity need not be shown"); *Tony*

---

[7] For this reason, the Bankruptcy Court devoted a significant portion of its decision to attempting to refute the underlying rationale of the *Adelphia* court's determination that equitable subordination was a valid claim and its statement that it "was not in a position to conclude that, by explicitly addressing equitable subordination in the Code, Congress intended to foreclose the possibility of equitable disallowance as another remedy under *Pepper* and its progeny." Ex. B (Decision) at 18.

*Shafrazi Gallery Inc. v. Christie's Inc.*, 2009 WL 1433049, at *2-3 (Sup. Ct. N.Y. Cnty. Apr. 14, 2009) (noting that "lack of privity is not a viable defense to a fraud claim").

Further, the Bankruptcy Court's ruling conflicts with well-settled law in the Second Circuit, which recognizes a party has standing to recover for fraud where, like here, it relies upon a defendant's fraudulent misrepresentation and the defendant intended or had reason to expect such reliance. *See Powers v. Ostreicher*, 824 F. Supp. 372, 376 (S.D.N.Y. 1993) ("Under [Restatement (Second) Torts] § 531, a defendant who has reason to expect an entity to rely on a fraudulent misrepresentation is now liable to that person, even if the defendant did not intend for the person to rely"); *Sec. Investor Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 77-78 (2d Cir. 2000); *Arnold Chevrolet LLC v. Tribune Co.*, 418 F. Supp. 2d 172, 189 (E.D.N.Y. 2006). Because the Bankruptcy Court failed to apply these controlling authorities in deciding Harbinger could not establish reliance, there is genuine doubt as to whether the Court applied the correct legal standard.

### 3.      Contract And Fraud Claims

The Bankruptcy Court erroneously concluded as a matter of law that Harbinger lacked standing to assert a fraud claim, because any violation of the Credit Agreement is a breach of contract claim that belongs to LightSquared. The Bankruptcy Court cited no legal authority, and overlooked controlling authorities that permit (a) both tort and contract claims, as well as (b) direct and derivative actions, to proceed *in parallel* when they arise from the same circumstances. *Rodin Properties-Shore Mall, N.V. v. Ullman*, 694 N.Y.S.2d 374, 376 (1st Dep't 1999) ("[L]iability in tort may arise from and be inextricably intertwined with that conduct which also constitutes a breach of contractual obligations."); *Sun Prods. Corp. v. Bruch*, 2011 WL 5120307, at *3 (S.D.N.Y. Oct. 28, 2011) (recognizing parallel fraud and contract claims may be brought, even by the same party, if the fraudulent misrepresentation "is collateral or

extraneous to the contract"); *In re Smith Barney Transfer Agent Litig.*, 765 F. Supp. 2d 391, 399 (S.D.N.Y. 2011) ("direct and derivative actions based on the same underlying conduct are not mutually exclusive"). There is a genuine dispute over whether the Bankruptcy Court applied the correct legal standard this governing authority in dismissing Harbinger's claims.

### 4. Standing

The Bankruptcy Court's holding that Harbinger lacked standing to assert its tort claims was a cornerstone of its Decision. That ruling was contrary to well-settled New York law and certainly gives rise to substantial ground for difference of opinion. The Decision ignored governing law that recognizes Harbinger has a protectable interest -- the infringement of which gives rise to liability in tort -- stemming from: (a) Harbinger's actual negotiations with the Ad Hoc Secured Group and with Jefferies (*see Brown v. AXA RE*, 2004 WL 941959, at *7 (S.D.N.Y. May 3, 2004) (parties who form a business relationship by negotiating financing arrangements may bring a claim for tortious interference with those relationships)); (b) Harbinger's pecuniary interest in LightSquared (*see Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 2011 WL 1899730, at *9 (S.D.N.Y. May 13, 2011) (parties who are "direct pecuniary beneficiaries of the business relationships of their affiliates" may bring a claim for tortious interference with those relationships)); and (c) Harbinger's expenditure of time, labor, skills in negotiating for a full-pay plan and to secure exit financing (*see LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 502 (S.D.N.Y. 2002) ("New York courts have found that persons have a protectable property interest in their 'labor, skill, expenditure, name and reputation . . . .'")).

### C. An Immediate Appeal Would Materially Advance The Ultimate Termination Of The Litigation.

Finally leave to appeal at this time will minimize the likelihood of piecemeal litigation that would waste the time and resources of the parties and the Bankruptcy Court. At present, the

claims asserted in LightSquared's Complaint -- and elaborated further in Harbinger's Second Amended Complaint -- involve many of the same facts and witnesses as the dismissed claims for which Harbinger seeks immediate appeal. For example, the misrepresentations giving rise to Harbinger's fraud claim rest on the same statements that underlie LightSquared's claims for breach of the Credit Agreement. And the same wrongful acquisition by SPSO of over $1 billion in Loan Debt, as part and parcel of Ergen's strategy on behalf of DISH and EchoStar to gain control of LightSquared's spectrum, lies at the core of Harbinger's tortious interference and unfair competition claims. Resolving the issues on appeal immediately would permit a single trial of all claims. The savings in resources would not only benefit the parties before this Court, but it would benefit the bankruptcy proceeding as a whole, allowing for a faster and more efficient resolution of the proceeding, benefitting all of LightSquared's creditors.

In similar circumstances, courts in this District have recognized the utility of permitting an immediate appeal. *Retirement Bd.*, 2013 WL 593766, at *5 (leave to appeal appropriate where appeal would streamline resolution of litigation) (citing *Transp. Workers Union, Local 100 v. N.Y.C. Transit Auth.*, 358 F.Supp.2d 347, 350 (S.D.N.Y.2005) ("An immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or to shorten the time required for trial.") (internal footnote and quotation marks omitted). Allowing Harbinger to pursue its appeal at this time will serve to ensure that all facets of this complicated multi-party dispute are litigated in tandem, rather than in duplicative and piecemeal proceedings.

## **CONCLUSION**

For the foregoing reasons, to the extent the Order is not appealable as of right, Plaintiffs'

motion for leave to appeal should be granted.

Dated: New York, New York
        December 2, 2013

Respectfully submitted,

KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP


By:____/s/ David M. Friedman_____
     Marc E. Kasowitz
     David M. Friedman
     Jed I. Bergman
     Christine A. Montenegro


1633 Broadway
New York, New York 10019
Tel. (212) 506-1700
Fax (212) 506-1800

*Attorneys for Plaintiffs-Appellants Harbinger*
*Capital Partners LLC, HGW US Holding Company*
*LP, Blue Line DZM Corp., and Harbinger Capital*
*Partners SP, Inc.*