Marc E. Kasowitz
David M. Friedman
Jed I. Bergman
Christine A. Montenegro
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Attorneys for Plaintiffs-Appellants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

In re:

LIGHTSQUARED INC., *et al.*,[1]

                Debtors.

-------------------------------------------------------------------X

HARBINGER CAPITAL PARTNERS LLC, HGW US
HOLDING COMPANY LP, BLUE LINE DZM CORP.,
AND HARBINGER CAPITAL PARTNERS SP, INC.,

                Plaintiffs-Appellants,

        - against -

CHARLES W. ERGEN, ECHOSTAR CORPORATION,
DISH NETWORK CORPORATION, L-BAND
ACQUISITION LLC, SP SPECIAL
OPPORTUNITIES LLC, SPECIAL OPPORTUNITIES
HOLDINGS LLC, SOUND POINT CAPITAL

Chapter 11

Case No. 12-12080 (SCC)

Jointly Administered

Adv. Proc. No. 13-1390 (SCC)

**HARBINGER'S
MEMORANDUM OF LAW
IN FURTHER SUPPORT
OF ITS MOTION FOR
FOR LEAVE TO APPEAL**

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal or foreign tax or registration identification number, are: LightSquared Inc. (8845), LightSquared Investors Holdings Inc. (0984), One Dot Four Corp. (8806), One Dot Six Corp. (8763), SkyTerra Rollup LLC (N/A), SkyTerra Rollup Sub LLC (N/A), SkyTerra Investors LLC (N/A), TMI Communications Delaware, Limited Partnership (4456), LightSquared GP Inc. (6190), LightSquared LP (3801), ATC Technologies, LLC (3432), LightSquared Corp. (1361), LightSquared Finance Co. (6962), LightSquared Network LLC (1750), LightSquared Inc. of Virginia (9725), LightSquared Subsidiary LLC (9821), LightSquared Bermuda Ltd. (7247), SkyTerra Holdings (Canada) Inc. (0631), SkyTerra (Canada) Inc. (0629) and One Dot Six TVCC Corp. (0040).

MANAGEMENT LP, AND STEPHEN KETCHUM,  :
                                     :
                    Defendants-Appellees.   :
---------------------------------------------------------------------X
THE AD HOC SECURED GROUP OF          :
LIGHTSQUARED LP LENDERS,[2] LIGHTSQUARED  :
INC., *et al.*, MAST CAPITAL MANAGEMENT, LLC,  :
AND U.S. BANK NATIONAL ASSOCIATION,  :
                                     :
                         Intervenors.   :
---------------------------------------------------------------------X

---

[2] As of the date hereof, the Ad Hoc LP Secured Group is comprised of Capital Research and Management Company, Cyrus Capital Partners, L.P., Fir Tree Capital Opportunity Master Fund, L.P., Intermarket Corporation, SP Special Opportunities LLC, and UBS AG, Stamford Branch. Collectively, each member of the Ad Hoc LP Secured Group or its affiliate is the advisor to or beneficial owner of, or the holder or manager of, various accounts with investment authority, contractual authority or voting authority for $1,379,606,450.74 in aggregate principal amount of loans (the "LP Secured Loans") made pursuant to that certain credit agreement, dated as of October 1, 2010 by and among LightSquared LP as borrower, its affiliate guarantors and the lenders party thereto from time to time, which represents approximately 82% of the outstanding LP Secured Loans (*See* Revised Seventh Supplemental Verified Statement of White & Case LLP Pursuant to Bankruptcy Rule 2019, dated July 26, 2013 [Dkt. No. 777]).

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ........................................................................................................................ 2

I.   THE DECISION AND ORDER ARE FINAL AND APPEALABLE AS OF
     RIGHT ..................................................................................................................... 2

     A.   The Decision And Order Are Final ............................................................... 2

     B.   The Fact That Harbinger's Claims Were Dismissed Without Prejudice
          Does Not Affect The Order's Finality. . .................................................... 5

     C.   Rule 54(b) Certification Is Not Required, Because Harbinger's Equitable
          Disallowance And Tort Claims Were Dismissed In Their Entirety Against
          All Defendants. ......................................................................................... 6

II.  ALTERNATIVELY, THIS COURT SHOULD GRANT LEAVE TO APPEAL ............. 8

     A.   Harbinger's Appeal Would Materially Advance The Ultimate Termination
          Of Litigation ............................................................................................. 8

     B.   Harbinger's Appeal Presents Controlling Issues Of Law. ........................... 10

     C.   There Is Substantial Ground For Difference Of Opinion As To Issues Of
          Controlling Law. ....................................................................................... 13

     D.   Exceptional Circumstances Exist Here. ..................................................... 15

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelphia Commc'ns Corp. v. Bank of Am., N.A. (In re Adelphia Commc'ns Corp.)*,
    365 B.R. 24 (Bankr. S.D.N.Y. 2007) .......................................................................13

*Allstate Ins. Co. v. Elzanaty*,
    2013 WL 2154759 (E.D.N.Y. May 16, 2013) .........................................................13

*Cement & Concrete Workers Dist. Council Welfare Fund v. Degaetano Constr., Inc.*,
    1998 WL 178865 (E.D.N.Y. 1998) ..................................................................... 7-8

*Cochran v. Channing Corp.*,
    211 F. Supp. 239 (S.D.N.Y. 1962) .......................................................................14

*Delta Air Lines, Inc. v. A.I. Leasing II, Inc. (In re Pan Am Corp.)*,
    159 B.R. 396 (S.D.N.Y. 1993) ...............................................................................7

*Dev. Specialists, Inc. v. Akin Gump Straus Hauer & Feld LLP*,
    2012 WL 2952929 (S.D.N.Y. July 18, 2012) .................................................11, 12

*Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*,
    2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ...................................................13, 14

*Faiveley Transp. USA, Inc. v. Wabtec Corp.*,
    2011 WL 1899730 (S.D.N.Y. May 13, 2011) .......................................................14

*LTV Steel Co. v. UMWA (In re Chateaugay Corp.)*,
    922 F.2d 86 (2d Cir. 1990) .....................................................................................7

*LTV Steel Co. v. UMWA (In re Chateauguay Corp.)*,
    928 F.2d 63 (2d Cir. 1991) .....................................................................................7

*N. Fork Bank v. Abelson*,
    207 B.R. 382 (E.D.N.Y. 1997) ............................................................................10

*Nova Info. Sys., Inc. v. Premier Operations, Ltd. (In re Premier Operations)*,
    290 B.R. 33 (S.D.N.Y. 2003) .................................................................................4

*Pal Family Trust v. Ticor Title Ins.*,
    490 B.R. 480 (S.D.N.Y. 2013) ........................................................................3, 4, 5

*Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.)*,
    101 F.3d 882 (2d Cir. 1996) ..............................................................................3, 4

*Ret. Bd. of Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of New York Mellon,*
  2013 WL 593766 (S.D.N.Y. Feb. 14, 2013) ....................................................................... 10-11

*Robinson v. Johns-Manville Corp. (In re Johns-Manville Corp.),*
  45 B.R. 833 (S.D.N.Y. 1984)................................................................................8, 10, 15

*Rodin Properties-Shore Mall, N.V. v. Ullman,*
  694 N.Y.S.2d 374 (1st Dep't 1999) .......................................................................14

*In re Wash. Mutual, Inc.,*
  461 B.R. 200 (Bankr. D. Del. 2011) ....................................................................13

*Williston v. Eggleston,*
  410 F. Supp. 2d 274 (S.D.N.Y. 2006)...................................................................15

## Statutes & Rules

28 U.S.C. § 158.......................................................................................................2, 8

11 U.S.C. § 502 ................................................................................................. *passim*

Bankruptcy Rule 1109 .............................................................................................7

Bankruptcy Rule 7024 .............................................................................................7

Bankruptcy Rule 7054 .............................................................................................6

Fed. R. Civ. P. 24.....................................................................................................7

Fed. R. Civ. P. 54.................................................................................................6, 7

## Other Authority

15A Charles Alan Wright & Arthur R. Miller,
  Federal Practice and Procedure § 3914.6 (2d ed. 2012) .........................................5

Harbinger respectfully submits this reply memorandum of law in further support of its motion for leave to appeal, to the extent not appealable as of right, from the Order and Decision of the Bankruptcy Court.[3]

## PRELIMINARY STATEMENT

Harbinger clearly is permitted to appeal the Bankruptcy Court's Order as of right. Leaving nothing to be determined, the Order dismissed in their entirety all of the claims in the bankruptcy proceeding in which Harbinger sought to assert its own rights, protect its own interests, and redress its own injuries. That Order is now final and ripe for appeal.

In arguing to the contrary, Defendants ignore the well-established principle that finality in the context of bankruptcy proceedings is to be treated flexibly. They repeatedly conflate the dismissed causes of action in which Harbinger sought to assert its own rights with Harbinger's objection under Section 502(b) of the Bankruptcy Code, an objection that can be asserted by any party in interest in order to a challenge a claim asserted *against the Debtors*. Thus, while Defendants repeatedly state that Harbinger's "claim" under Section 502(b) is "scheduled to go to trial in less than a month," the Bankruptcy Court at the upcoming hearing will not consider any of Harbinger's own claims against Defendants, or be in a position to redress the harm done to Harbinger as the result of Defendants' wrongdoing. Although Harbinger's Section 502(b) objection and the Debtors' claims against certain of the Defendants remain, those claims seek separate relief, for separate injuries (*i.e.,* the Debtors'), and they are asserted on separate legal theories, than the claims subject to the instant appeal.

Since the Bankruptcy Court's Order dismissed all of the claims that were personal to Harbinger against the Defendants in which Harbinger sought to redress its own damages, as well

---

[3] Capitalized terms used but not defined herein have the meaning ascribed to them in Harbinger's opening brief.

as Harbinger's claim for equitable disallowance of SPSO's claim, which was brought to protect Harbinger's unique ownership rights as controlling shareholder of LightSquared, the Order is final and appealable as to those claims.

In the alternative, if this Court finds that the Bankruptcy Court's Order was not final, then leave to appeal should be granted. Leave to appeal will materially advance the ultimate termination of the bankruptcy litigation by ensuring that Harbinger's equitable disallowance claim is heard promptly, which will have a material effect on determining the validity of the implementation of any plan favoring the Defendants, the disposition of the Debtors' spectrum rights, and the distribution of the proceeds from the sale of those rights. It will also allow this Court to resolve controlling issues of law as to which there is substantial disagreement, and as to which the Bankruptcy Court erred in dismissing Harbinger's claims.

## ARGUMENT

## I. THE DECISION AND ORDER ARE FINAL AND APPEALABLE AS OF RIGHT.

Harbinger demonstrated in its opening brief that the Bankruptcy Court's Order is appealable as of right as a final order. *See* 28 U.S.C. § 158(a); Harbinger Mem. 13-16. In arguing to the contrary, Defendants ignore the principle that finality for purposes of an appeal is more flexible in the context of a bankruptcy proceeding. They also fail to acknowledge that the Order disposed of *all* of Harbinger's own claims, leaving nothing to resolve in the Bankruptcy Court concerning Harbinger's rights, the Defendants' liability to Harbinger, or damages caused to Harbinger as the result of Defendants' wrongful conduct. The Order is thus final and properly appealable under governing law.

### A. The Decision And Order Are Final.

The fact that the Bankruptcy Court gave Harbinger the right to assert an objection under Section 502(b) of the Bankruptcy Code by filing an amended complaint does not affect the

appealability of Harbinger's own damages claims. The Bankruptcy Court's Order disposed of all

of Harbinger's tort claims, granting it leave to amend only to assert a claim objection under

Section 502. Bergman Decl. Ex. A (Order) at 2. Section 502 does not permit Harbinger to assert

its own causes of action; it merely allows any "party in interest" in a bankruptcy proceeding to

object to a claim, including on the ground that "such claim is unenforceable *against the debtor*

and property *of the debtor*." 11 U.S.C. § 502 (emphasis added). Through its Section 502

objection, Harbinger can only vindicate *the Debtors'* rights by showing that a claim is

unenforceable against the Debtors.

The Bankruptcy Court's Order did not grant Harbinger permission to amend *any* claim in

which it could assert its own rights, protect its own interests, or seek redress for its own injuries.

Indeed, the Bankruptcy Court found that a cause of action for equitable disallowance does not

exist, and made clear from the bench that Harbinger itself could not assert valid tort claims

against Defendants. *See, e.g.*, Bergman Decl. Ex. D (10/29/13 Tr.) at 132:24-133:2 ("I can't

imagine a set of facts similar to the ones that have been pleaded now in which Harbinger could

reassert claims against DISH or EchoStar."). Thus, Harbinger's claims were dismissed with

finality. *See Pal Family Trust v. Ticor Title Ins.*, 490 B.R. 480, 482 (S.D.N.Y. 2013) ("[A]

bankruptcy judge's order is final if it completely resolve[s] all of the issues pertaining to a

discrete claim, including issues as to the proper relief.").

As explained in Harbinger's opening brief -- and largely ignored by Defendants --

finality in the context of a bankruptcy proceeding is applied with flexibility. *See Pegasus

Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.)*, 101 F.3d 882, 885 (2d Cir. 1996)

(finality for purposes of a bankruptcy appeal is "more flexible than in ordinary civil litigation,

because bankruptcy proceedings often continue for long periods of time and discrete claims are

resolved from time to time over the course of the bankruptcy proceeding"); *Pal Family Trust*,

490 B.R. at 483 ("finality in bankruptcy jurisdiction is viewed more broadly than in other

contexts."). As one court in the Southern District has explained:

> Several features of bankruptcy proceedings have prompted
> Congress and the courts to carve out a significant exception to the
> finality doctrine applicable in bankruptcy appeals. By their very
> nature, bankruptcy cases involve numerous parties asserting varied
> claims. These multiple claims, although ultimately connected and
> interdependent by virtue of whatever constitutes the debtor's
> estate, are often separable and discrete, and are resolved at various
> times and procedural stages of proceedings that typically extend
> over long periods of time. . . . The bankruptcy action as a whole
> encompasses the universe of claims engendered by the petition
> seeking adjudication of claims against the debtor's property that is
> subject of the case, as well as satellite adversary proceedings often
> involving disputes between the debtor's estate and third parties. In
> short, "a bankruptcy case is simply an aggregation of individual
> controversies ...." that, but for the consolidation in under the aegis
> of a single proceeding, would be separate lawsuits. . . .

*Nova Info. Sys., Inc. v. Premier Operations, Ltd. (In re Premier Operations)*, 290 B.R. 33, 40

(S.D.N.Y. 2003) (citation omitted). Thus, "courts have recognized that the doctrine of finality

for appellate purposes requires a more flexible and pragmatic application in bankruptcy cases

than in other contexts." *Id.* at 40. Accordingly, "bankruptcy court orders and judgments

regarding claims whose resolution is separable from all other matters in dispute in the overall

proceeding need not await an adjudication of the entire action before they may be appealed." *Id.*

at 40-41. Instead, a bankruptcy court's order will be considered final if it "'completely resolves

all of the issues pertaining to a *discrete claim*, including issues as to the proper relief.'" *In re*

*Pegasus Agency*, 101 F.3d at 885 (quoting *In re Prudential Lines, Inc.*, 59 F.3d 327, 331 (2d Cir.

1995)) (emphasis added).

Here, the Order is final because it disposed of "discrete claims" -- that is, all of the claims

against Defendants that were personal to Harbinger, in which Harbinger sought to redress its

own damages. As those claims were dismissed in their entirety, nothing remains to be determined as to "proper relief," and the dismissal is final. Although Harbinger's Section 502(b) objection and *the Debtors'* claims against certain of the Defendants are continuing, those claims seek separate relief, for a separate set of plaintiffs -- the Debtors -- based on separate legal theories than the claims on this appeal. The pendency of those separate claims in the Bankruptcy Court does not affect the finality of the Order with respect to the Bankruptcy Court's dismissal of Harbinger's own claims, which were "completely resolved."

**B.      The Fact That Harbinger's Claims Were Dismissed
          Without Prejudice Does Not Affect The Order's Finality.**

Defendants' argument that the Order is not appealable because Harbinger's claims were dismissed without prejudice is equally unfounded. The court in *Pal Family Trust* addressed this issue head on. There, the court noted that while "the Second Circuit has not specifically addressed the finality of a dismissal without prejudice in the bankruptcy context, its decisions that dismissals without prejudice are final and appealable in other contexts support this conclusion." *Pal Family Trust*, 490 B.R. at 483 (collecting authorities); 15A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3914.6 (2d ed. 2012) ("Many cases reflect the rule that a dismissal without prejudice is appealable as a final judgment."). Thus, the *Pal Family Trust* court found that "[t]here is no reason the Second Circuit would not apply these cases to the bankruptcy context, especially because it has held that finality in bankruptcy jurisdiction is viewed more broadly than in other contexts." *Pal Family Trust*, 490 B.R. at 483.

Therefore, the fact that Harbinger's tort claims were dismissed without prejudice does not affect the finality of the Order for the purposes of appeal. Indeed, although the bankruptcy court dismissed those claims without prejudice, it expressed strong skepticism about their viability. *See, e.g.*, Bergman Decl. Ex. D (10/29/13 Tr.) at 132:24-133:2. And while the Order purported

to retain jurisdiction, that retention made sense in the context of *LightSquared's* ability -- but not Harbinger's -- to assert additional claims. Under these circumstances, given the broad flexibility with which courts treat the issue of finality in bankruptcy and the settled precedent in this Circuit allowing appeals from dismissal without prejudice, the Order is fairly considered final and Harbinger's appeal is proper.

      **C.**      **Rule 54(b) Certification Is Not Required,**
                  **Because Harbinger's Equitable Disallowance And Tort**
                  <u>**Claims Were Dismissed In Their Entirety Against All Defendants.**</u>

Defendants' contention that Harbinger may not appeal from the Order absent a Rule 54(b) certification is similarly unavailing. In making that argument, the Defendants fail to read the Rule in the context of the policy favoring flexibility in the application of finality to orders in bankruptcy proceedings. Rule 54(b), which is adopted in Bankruptcy Rule 7054, provides that "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

In light of the policy favoring flexibility, Rule 54(b) should not apply here, because the Bankruptcy Court dismissed all claims asserted by the Harbinger Parties in their individual capacity to redress their own injuries. Had the Bankruptcy Court dismissed only some of those claims, or had it only dismissed Harbinger's claims against some of the Defendants, then the application of Rule 54(b) would have been proper, and a Rule 54(b) certification would be required. But that is not what the Bankruptcy Court did here: the court dismissed *all* of Harbinger's own claims, against *all* of the Defendants, leaving only a claim objection. Under these circumstances, the flexible approach to finality would be ill-served by requiring a Rule 54(b) certification.

Defendants fail to articulate any valid reason why flexibility should not be applied in this instance. Again, only Harbinger's Section 502(b) objection to SPSO's claim against the Debtors estate, as well as the Debtors' own claims, remain before the Bankruptcy Court.[4] No claims related to Harbinger's individual rights or injuries remain, and Harbinger's own claims will not be adjudicated at the upcoming hearing. Therefore, in accordance with the policy favoring flexibility, the Order dismissing Harbinger's claims should be deemed final, and Rule 54(b) does not apply.[5]

Moreover, even if a Rule 54(b) certification were required (and it is not), that determination would not divest this Court of appellate jurisdiction, and the appeal should be held in abeyance to allow Harbinger to obtain a Rule 54(b) certification from the bankruptcy court. *See, e.g., Cement & Concrete Workers Dist. Council Welfare Fund v. Degaetano Constr., Inc.*, 1998 WL 178865, at *3 (E.D.N.Y. 1998) ("When a notice of appeal has been filed prematurely -- generally, where an issue has not yet been certified for appeal pursuant to Fed.R.Civ.P. 54(b) -- appellate courts have not hesitated to hold the appeal in abeyance to allow

---

[4]    At the time that the Bankruptcy Court dismissed the Amended Complaint, the Debtors had not yet filed their own complaint, and Harbinger's was the only complaint in the adversary proceeding. The Debtors had only intervened in the proceeding pursuant to Bankruptcy Rule 1109 and Fed. R. Civ. P. 24, adopted by Bankruptcy Rule 7024. Bankruptcy Rule 1109(b) provides that "[a] party in interest, including the debtor. . . , may raise and may appear and be heard on any issue in a case under this chapter." Additionally, Fed. R. Civ. P. 24(a)(1) provides that "[o]n timely motion, the court must permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute." Thus, while the Debtors had intervened "to be heard" in the adversary proceeding at the time of the Bankruptcy Court's Order, they were not a "party" to that action triggering the operation of Rule 54(b). Defendants cite no case holding that such a limited -- and statutorily authorized -- intervention can defeat finality or trigger a Rule 54(b) certification requirement.

[5]    Defendants' reliance on *LTV Steel Co. v. UMWA (In re Chateauguay Corp.)*, 928 F.2d 63 (2d Cir. 1991) and *Delta Air Lines, Inc. v. A.I. Leasing II, Inc. (In re Pan Am Corp.)*, 159 B.R. 396 (S.D.N.Y. 1993) is misplaced. *In re Chateaugay Corp.*, as explained in an earlier decision, *LTV Steel Co. v. UMWA (In re Chateaugay Corp.)*, 922 F.2d 86 (2d Cir. 1990), involved an appeal after the bankruptcy court granted *partial* summary judgment for debtor. Here, the Bankruptcy Court dismissed all of Harbinger's direct claims, making a Rule 54(b) certification unnecessary. In *In re Pan Am Corp.*, counterclaims and third-party claims were dismissed against some, but not all, counter-claim and third-party defendants. Here, Harbinger's claims were dismissed against all Defendants.

the parties to seek certification."). Thus, Defendants have not offered any grounds to divest this Court of jurisdiction to hear Harbinger's appeal from the Bankruptcy Court's final order.

## II.     **ALTERNATIVELY, THIS COURT SHOULD GRANT LEAVE TO APPEAL.**

If this Court does not find that the Order was final as to Harbinger's claims, the Court should nevertheless grant leave to appeal under 28 U.S.C. §158(a)(3). Leave to appeal is proper where the order appealed from: (1) involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Robinson v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 45 B.R. 833, 835 (S.D.N.Y. 1984) (applying 28 U.S.C. § 1292(b) to motion for leave to appeal order of bankruptcy court). As set forth below and in Harbinger's opening brief, Harbinger meets each of those elements. Harbinger Mem. 16-24.

### A.     **Harbinger's Appeal Would Materially Advance The Ultimate Termination Of Litigation.**

In arguing that leave to appeal will not materially advance the termination of the bankruptcy litigation, Defendants ignore the gravamen of Harbinger's claims, which is that the Defendants used fraud and other wrongful means to infiltrate Harbinger's capital structure in order to obtain a dominant position in the bankruptcy proceeding from which to influence its outcome. At present, Defendant SPSO is the Debtors' largest creditor, with a claim of approximately one billion dollars, and Defendant LBAC stands poised to acquire the Debtors' valuable spectrum assets. *See* Revised Seventh Supplemental Verified Statement of White & Case LLP Pursuant to Bankruptcy Rule 2019, dated July 26, 2013 [Dkt. No. 777]; *see also* Bergman Decl. Ex. C (Am. Compl.) ¶¶ 6, 74, 78. If leave to appeal is granted, and Harbinger's claims are promptly determined, their resolution will materially advance the termination of the

bankruptcy proceedings by settling the legitimacy of the disposition of the Debtors' assets and lending finality to the resolution of the Debtors' estates.

In its now-dismissed Amended Complaint, Harbinger alleged that Defendants engaged in a tortious scheme to co-opt the bankruptcy process for the benefit of DISH and EchoStar. The operative credit agreement ("Credit Agreement") prohibited the purchase of LightSquared's debt by LightSquared's competitors, including DISH and EchoStar. Bergman Decl. Ex. C (Am. Compl.) ¶¶ 39-40, 42. Harbinger alleges that DISH's and EchoStar's Executive Chairman, defendant Charles Ergen, created and used defendant SPSO to carry out the scheme, purchasing a substantial amount of LightSquared's debt while fraudulently misrepresenting that SPSO was an "Eligible Assignee" under the Credit Agreement. *Id.* ¶¶ 40-42.

The ultimate purpose of the scheme, as alleged, was to preempt a reorganization of LightSquared and allow DISH and EchoStar to purchase LightSquared's valuable spectrum assets at a discount to their true value. *Id.* ¶¶ 35, 77-81. After infiltrating LightSquared's capital structure and undermining Harbinger's own negotiations, SPSO, now LightSquared's largest creditor, took control of the Ad Hoc Secured Group of LightSquared LP's lenders (the "Ad Hoc Secured Group"), and used that control to propound its own sale plan. *Id.* ¶¶ 12, 79-81. Under that plan, defendant LBAC, another Ergen-created vehicle that is now a subsidiary of DISH, is positioned as the stalking horse bidder to acquire the Debtors' valuable spectrum assets and is the presumptive purchaser. Ergen also now stands to reap enormous gains from the sale of the spectrum assets to his own company, because the proceeds from that sale will be used to repay creditors at or near par, and Ergen purchased the debt by fraudulent means at a steep discount. *Id.* ¶¶ 11, 78. Thus, Defendants are now poised to reap the benefit of their fraud and to divest Harbinger of its ownership interest in LightSquared.

Leave to appeal would materially advance the termination of the bankruptcy because prompt determination of whether the Debtors' largest creditor used fraud and improper means to infiltrate the bankruptcy process would resolve issues related to the disposition of the Debtors' most valuable assets and the distribution of the proceeds from their sale, lending finality to those proceedings. By contrast, if leave to appeal is not granted, the implementation of a plan favoring the Defendants, the disposition of the Debtors' spectrum rights, and the distribution of the proceeds from the sale of those rights will all be left in uncertainty. Indeed, if leave to appeal is not granted and Harbinger's equitable disallowance claim is ultimately successful, additional complex and expensive litigation will be spawned to undo the damage and claw back the ill-gotten gains, prolonging the bankruptcy. Thus, leave to appeal should be granted, because it will materially advance the ultimate termination of the bankruptcy litigation. *See In re Johns-Manville Corp.*, 45 B.R. at 836 ("If appeal is not made now but is made as of right once a reorganization plan is finally formulated and future litigants' rights have ripened, the entire plan will be in jeopardy and the period of formulation potentially wasted. It is preferable to resolve this uncertain situation now, before time and expense have gone into a possibly illegal configuration of the parties.").

### B. Harbinger's Appeal Presents Controlling Issues Of Law.

Harbinger's appeal also presents controlling issues of law. "To establish that an order contains a controlling question of law, it must be shown that either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation." *N. Fork Bank v. Abelson*, 207 B.R. 382, 389 (E.D.N.Y. 1997) (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990); *see also Ret. Bd. of Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of New York Mellon*, 2013 WL 593766, at *5 (S.D.N.Y. Feb. 14, 2013) (issue of law controlling because

"even though not resulting in dismissal, could significantly affect the conduct of the action").
Moreover, where leave to appeal is granted, even if only one controlling issue of law is found,
the entire order -- and not just the issue identified for appeal -- may be considered by the
appellate court. *See Dev. Specialists, Inc. v. Akin Gump Straus Hauer & Feld LLP*, 2012 WL
2952929, at *4 (S.D.N.Y. July 18, 2012) (citation and internal quotation marks omitted).  Thus,
while each of the questions as to which Harbinger seeks leave to appeal involves a controlling
question of law, even if this Court finds only one such controlling issue, it may consider the
entire Decision and Order on appeal.

Here, the viability of Harbinger's claim for equitable disallowance is manifestly a
controlling question of law.  As discussed above, reversing the dismissal of that claim would
materially affect the resolution of the entire bankruptcy because the resulting adjudication would
determine whether the claim of the Debtors' largest creditor was viable, and this determination
would materially affect the implementation of a plan favoring the Defendants, the disposition of
the Debtors' spectrum rights, and the distribution of the proceeds from the sale of those rights.
The adjudication of that claim will thus have a "material affect on the conduct of the action,"
including the ultimate resolution of the bankruptcy proceeding.

The fact that Harbinger's equitable disallowance claim presents a controlling issue of law
is enough to warrant leave to appeal.  But it is also the case that the dismissal of Harbinger's tort
claims effectively deprived it of the ability to achieve redress for the injuries caused by
Defendants' wrongdoing.  Requiring Harbinger to wait until LightSquared's intervenor claims in
the current adversary proceeding are concluded before bringing this appeal may result in
Harbinger being deprived of its equity interests and control over LightSquared.  Thus, the issues

raised by Harbinger on appeal present controlling issues of law that led directly to the dismissal of Harbinger's claims.

Defendants' claim that no controlling questions of law are present because the Bankruptcy Court purportedly offered alternative bases for dismissal is simply unfounded. First and foremost, the Bankruptcy Court did not find multiple alternative bases for the dismissal of Harbinger's equitable disallowance claim. It found that such a cause of action does not exist as a matter of law. Bergman Decl. Ex. B (Decision) at 13-24. Second, contrary to Defendants' contention, courts recognize that a dispositive ruling may rest on alternative controlling issues of law. *See, e.g., Dev. Specialists*, 2012 WL 2952929, at *4 (ruling resting on two alternative controlling issues of law). Here, for example, with respect to the Bankruptcy Court's dismissal of Harbinger's fraud claim, there are several independent but controlling questions of law presented, including whether Harbinger was entitled to rely on Defendants' representations or omissions made with respect to the Loan Debt and whether Harbinger, as a non-party to a contract, can assert a claim for fraud based on conduct that is also, separately, a breach of contract.

Moreover, the fact that the Bankruptcy Court made fundamental errors of law and then applied those errors to Harbinger's allegations does not turn those errors of law into errors of fact. Thus, while Defendants assert that "[w]hether Harbinger's fraud claim 'arises from' the same circumstances as LightSquared's contract claims" is not a "pure question of law," that formulation obscures the pure issue of law implicated by the Decision and Order as to whether a non-party to a contract is barred from bringing a fraud claim based on conduct that is also a breach of the contract. This is purely a legal question that can be determined -- and rectified -- by reading the Decision and the relevant case law. No "combing of the record" is required.

**C.**     **There Is Substantial Ground For Difference**
           **Of Opinion As To Issues Of Controlling Law.**

Leave to appeal is also proper because there is a substantial ground for difference of opinion as to issues of controlling law. A question of law presents substantial grounds for difference of opinion where courts disagree on the question to be certified for appeal. *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.*), 2006 WL 2548592, at \*3 (S.D.N.Y. Sept. 5, 2006) (granting leave to appeal). There should be "genuine doubt as to whether the Bankruptcy Court applied the correct standard." *Allstate Ins. Co. v. Elzanaty*, 2013 WL 2154759, at \*4-5 (E.D.N.Y. May 16, 2013) (finding substantial ground for a difference of opinion, sufficient to warrant interlocutory appeal, where defendants disagreed with the court's decision to extend common law to cover plaintiffs' claim and not look instead to statutory authority).

Here, while the Bankruptcy Court found that a cause of action for equitable disallowance does not exist, several other courts have ruled otherwise. *Compare* Ex. B (Decision) at 13-26, *with Adelphia Commc'ns Corp. v. Bank of Am., N.A. (In re Adelphia Commc'ns Corp.*), 365 B.R. 24 (Bankr. S.D.N.Y. 2007) (denying motion to dismiss equitable disallowance claim), *aff'd Adelphia Recovery Trust v. Bank of Am., N.A.*, 390 B.R. 64 (S.D.N.Y. 2008) *and In re Wash. Mutual, Inc.*, 461 B.R. 200 (Bankr. D. Del. 2011) (holding equity committee could assert a claim for equitable disallowance), *vacated in part on other grounds,* 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012). While Defendants claim that the issue has not been "authoritatively addressed," two bankruptcy courts within the same district have now split as to whether a viable cause of action for equitable disallowance exists. This split among courts is sufficient to establish a disagreement as to controlling law. *See In re Enron Corp.*, 2006 WL 2548592, at \*4

("substantial ground for a difference of opinion" is met where "there is conflicting authority on the issue").

Moreover, as set forth in greater detail in Harbinger's opening brief, the Bankruptcy Court repeatedly took positions that conflict with established case law. *Compare, e.g.*, Bergman Decl. Ex. B (Decision) at 36 (Harbinger did not have a right to rely on Defendants' misrepresentations or omissions because it was not a party to the Credit Agreement) *with Cochran v. Channing Corp.*, 211 F. Supp. 239, 246 (S.D.N.Y. 1962) (recognizing "when fraud is alleged direct privity need not be shown"); Bergman Decl. Ex. B (Decision) at 37 (Harbinger lacked standing to assert a fraud claim, because any violation of the Credit Agreement is a breach of contract claim that belongs exclusively to LightSquared) *with Rodin Properties-Shore Mall, N.V. v. Ullman*, 694 N.Y.S.2d 374, 376 (1st Dep't 1999) ("[L]iability in tort may arise from and be inextricably intertwined with that conduct which also constitutes a breach of contractual obligations."); Bergman Decl. Ex. B (Decision) at 40-41 (holding that Harbinger lacked standing to assert its tort claims) *with Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 2011 WL 1899730, at *9 (S.D.N.Y. May 13, 2011) (parties who are "direct pecuniary beneficiaries of the business relationships of their affiliates" may bring a claim for tortious interference with those relationships).

These deviations from established case law represent more than a "quibble" with the Bankruptcy Court or a disagreement between the parties. They constitute a fundamental disagreement between the Bankruptcy Court on the one hand, and New York and other federal courts on the other, as to controlling issues of law that formed the basis for the Decision and Order. These substantial grounds for difference of opinion warrant prompt resolution by this Court, and leave to appeal should be granted.

**D.  Exceptional Circumstances Exist Here.**

To be entitled to leave to appeal, a party must also demonstrate "exceptional circumstances." Exceptional circumstances exist "where interlocutory review might avoid protracted and expensive litigation." *Williston v. Eggleston*, 410 F. Supp. 2d 274, 276 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). This is such a case.

In arguing that Harbinger cannot demonstrate exceptional circumstances, Defendants again ignore Harbinger's claim that Defendants used fraud and other wrongful means to infiltrate Harbinger's capital structure in order to obtain a controlling position in the bankruptcy proceeding from which to influence its outcome. A prompt appeal is necessary to help prevent that scheme from coming to fruition. If leave to appeal is not granted, and Harbinger's equitable disallowance claim is ultimately successful, additional complex and expensive litigation will be required to undo the resulting harm, unnecessarily prolonging the bankruptcy. Because "interlocutory review might avoid protracted and expensive litigation," exceptional circumstances exist here. *Williston*, 410 F. Supp. 2d at 276; *see also In re Johns-Manville*, 45 B.R. at 836 (S.D.N.Y. 1984) ("It is preferable to resolve this uncertain situation now, before time and expense have gone into a possibly illegal configuration of the parties.").

## CONCLUSION

For the foregoing reasons, to the extent the Order is not appealable as of right, Plaintiffs' motion for leave to appeal should be granted.

Dated: New York, New York
       December 23, 2013

Respectfully submitted,

KASOWITZ, BENSON, TORRES
   & FRIEDMAN LLP


By:    /s/ David M. Friedman
       Marc E. Kasowitz
       David M. Friedman
       Jed I. Bergman
       Christine A. Montenegro


1633 Broadway
New York, New York 10019
Tel. (212) 506-1700
Fax (212) 506-1800

*Attorneys for Plaintiffs-Appellants Harbinger
Capital Partners LLC, HGW US Holding Company
LP, Blue Line DZM Corp., and Harbinger Capital
Partners SP, Inc.*